**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE: PRE-FILLED PROPANE | ) | MDL No. 2567 |
| TANK ANTITRUST LITIGATION | ) | |
| | ) | **Master Case No. 14-02567-MD-W-GAF** |
| | ) | |
| INDIRECT PURCHASER ACTIONS | ) | |

## ORDER

Now before the Court is Defendants' UGI Corporation; AmeriGas Partners, LP; AmeriGas Propane, Inc.; AmeriGas Propane, LP[1]; Ferrellgas Partners, LP; and Ferrellgas LP[2] (collectively, "Defendants") Motion for Judgment on the Pleadings Based on the Timeliness of Indirect Purchasers' Remaining State Law Claims. (Master Docket Doc. # 340). The Indirect Purchaser Plaintiffs oppose. (Master Docket Doc. # 346). For the reasons stated below, Defendants' Motion is GRANTED in part, and DENIED in part.

## DISCUSSION

### I.    BACKGROUND

For a factual background of this case, the Court incorporates by reference its previous Order that determined jurisdiction over these claims. (Master Docket Doc. # 333). The Court will repeat the procedural history of this matter to provide clarity to this Order.

The first complaint in the present action (the "*Ortiz* Complaint") was filed on May 30, 2014, which included allegations that Defendants' 2008 conduct violated Section 1 of the Sherman Act and state-antitrust laws, including the laws of Maine, Vermont, and Wisconsin. (Case No. 14–

---

[1] UGI Corporation; AmeriGas Partners, LP; AmeriGas Propane, Inc.; and AmeriGas Propane, LP will be collectively referred to as "AmeriGas."

[2] Ferrellgas Partners, L.P. and Ferrellgas, L.P. will be collectively referred to as "Ferrellgas." Ferrellgas does business under the name Blue Rhino.

Case 2:14-cv-04164-GAF   Document 172   Filed 08/21/19   Page 1 of 36

00917–CV–W–GAF, Doc. # 1).  The *Ortiz* Complaint was consolidated with a number of other similar actions into a multidistrict litigation and transferred to this Court on October 16, 2014. (Master Docket Doc. # 1).  Indirect Purchaser Plaintiffs filed a Consolidated Class Action Complaint on January 29, 2015.  (Master Docket Doc. # 105).  Defendants jointly moved to dismiss both the Direct Purchaser Plaintiffs' and Indirect Purchaser Plaintiffs' complaints.  (Master Docket Docs. ## 135, 137).

On July 2, 2015, this Court granted in part Defendants' Motion to Dismiss.  *In re: Pre-Filled Propane Tank Antitrust Litig.*, 14-02567-MD-W-GAF, 2015 WL 12791756, at *1 (W.D. Mo. July 2, 2015), *reversed by* 860 F.3d 1059 (8th Cir. 2017).  The Court determined that all Plaintiffs' federal antitrust claims were barred by the four-year federal antitrust statute of limitations.  *Id*. at *9-10. However, this Court determined that the Indirect Purchaser Plaintiffs' injunctive relief claim, as a claim in equity, was not governed by the statute of limitations and was instead governed by the doctrine of laches.  *Id*. at *11.  This Court concluded that Defendants failed to meet their burden under the doctrine of laches because they failed to establish the existence of prejudice.  *Id*.  As such, the Court granted Defendants' Motion to Dismiss the Direct Purchaser Plaintiffs' complaint in its entirety.  *Id*.  The Court also granted Defendants' Motion to Dismiss on the Indirect Purchase Plaintiffs' federal and state antitrust claims, Counts II and III respectively.  *Id*.  The Court denied the Motion as to Count I, injunctive relief for a violation of Section I of the Sherman Act, of the Indirect Purchaser Plaintiffs' Amended Complaint. *Id*. at *11.

The Eighth Circuit, sitting en banc, reversed the Court's dismissal of the Direct Purchaser Plaintiffs' complaint.  *In re Pre-Filled Propane Tank Antitrust Litig*, 860 F.3d 1059, 1062 (8th Cir. 2017) (en banc), *cert denied* 138 S. Ct. 647 (Jan. 8, 2018) [hereinafter *Propane En Banc*].  The Eighth Circuit reversed due to its conclusion that the statute of limitations did not bar the Sherman Act claims.  *Id*. at 1071.  The Eighth Circuit stated: "Under *Klehr*, 'each sale to the plaintiff[s]' in

a price-fixing conspiracy 'starts the statutory period running again.'" *Id.* at 1068 (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997)).

Based on the discussion of the Direct Purchaser Plaintiffs' Amended Complaint, the Eighth Circuit emphasized that "the issue is whether the amended complaint alleges that the conspiracy continued when the sales took place." *Id.* at 1070. The court concluded: "The amended complaint alleges sufficient factual matter, accepted as true, to show a continuing violation to restart the statute of limitations, and, therefore, to state a claim to relief that is plausible on its face." *Id.* at 1071 (quotation omitted). Thus, the Direct Purchaser Plaintiffs' claims were remanded to this Court and are currently pending.

Before the issuance of *Propane En Banc*, Indirect Purchaser Plaintiffs moved for leave to amend their complaint to add three new subclasses asserting damages: 1) a six-year statute-of-limitations subclass, for violations of Maine, Vermont, and Wisconsin law; and 2) a new-purchaser subclass, for violations of Kansas antitrust law; and 3) a new-purchaser subclass for laws of "*Illinois Brick* repealer states." (*See* Master Docket Doc. # 173-1, Count III, Count IV). The Indirect Purchaser Plaintiffs also proposed another federal-disgorgement claim. (*Id.* at Count II). This Court ruled that the amendments to add the federal-disgorgement claim and the new-purchaser subclasses would be futile because the claims were time-barred. (Master Docket Doc. # 197, p. 12). Conversely, the Court did allow the Indirect Purchaser Plaintiffs to add the six-year statute of limitations subclass. (*Id.*). As such, the First Amended Class Complaint, filed on October 16, 2015, retained the federal-injunctive claim and added the six-year statute of limitations subclass's state-law claim. (Master Docket Doc. # 198, Count I, Count II). Thus, only Plaintiffs' state-law claims under the laws of Maine, Vermont, and Wisconsin remained in addition to the federal injunctive-relief claim. (*Id.* at Count II).

Case 2:14-cv-04164-GAF   Document 172   Filed 08/21/19   Page 3 of 36

Defendants then moved for Judgment on the Pleadings on Indirect Purchaser Plaintiffs' Amended Complaint. (Master Docket Doc. # 210). The Court granted Defendants' Motion as to Count I of the complaint. *In re Pre-Filled Propane Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2016 WL 6963059, at *11 (W.D. Mo. Jan. 13, 2016) [hereinafter *Ortiz I*]. The Court found that Indirect Purchaser Plaintiffs lacked standing to assert Count I because the alleged injury was not redressable by court order as the relief sought was cumulative of the FTC Action. *Id*. at *5-6. However, the Court denied Defendants' Motion as to Count II, which alleged violations of state antitrust laws. *Id*. at *11. The Court found that this Count was not barred by the six-year statute of limitations and that Indirect Purchaser Plaintiffs had standing to assert their claims. *Id*. After this decision, only Count II of the Amended Complaint remained.

Meanwhile, on July 21, 2016, an additional complaint by another group of indirect purchasers,[3] was filed. (Case No. 16-00809-CV-MD-GAF, Doc. # 1). The *Orr* Complaint, which was consolidated into the same multidistrict litigation proceeding as *Ortiz*, included a federal injunctive-relief claim, a federal-disgorgement claim, the new-purchaser subclasses the *Ortiz* Plaintiffs tried to add to their Complaint, and a six-year statute of limitations subclass damages claim. (*Id*.).

Defendants then moved for Summary Judgment for the remaining *Ortiz* claims. (Master Docket Doc. # 232). The Court granted that motion by finding that the state-law claims were barred by statute of limitations and, in the alternative, the named Plaintiffs lacked standing to assert claims under the laws of Maine, Vermont, and Wisconsin. *In re Pre-Filled Tank Antitrust Litig.*, No. 14-0256-MD-W-GAF, 2016 WL 6963058, at *5 (W.D. Mo. Sept. 2, 2016) [hereinafter *Ortiz II*]. The Court likewise dismissed the remaining state-law claims of the *Orr* Plaintiffs. (Master

---

[3] This case will be referred to as *Orr*.

4

Docket Doc. # 245). Both the *Ortiz* and *Orr* Plaintiffs appealed to the Eighth Circuit. (Master Docket Doc. # 249; Case No. 16-00809-MD-W-GAF, Doc. # 11). The Eighth Circuit consolidated the *Ortiz* and *Orr* appeals. (Case No. 16-00809-MD-W-GAF, Doc. # 13).

On appeal, the Eighth Circuit affirmed the Court's dismissal of Indirect Purchaser Plaintiffs' federal injunctive claims. *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1058 (8th Cir. 2018) [hereinafter *Ortiz III*]. The Eighth Circuit concluded that because Indirect Purchaser Plaintiffs failed to plead actual injury, they lacked standing to pursue their injunctive relief claims. *Id*. at 1051-58. After affirming the Court's dismissal of the federal-injunctive-relief claims, the Eighth Circuit remanded the case to this Court to consider the threshold issue of "whether the state-law-damages claims should remain in federal court." *Id*. at 1059-60. The Eighth Circuit further instructed: "This court remands to the district court to analyze under [28 U.S.C.] § 1367(c) whether it should exercise supplemental jurisdiction over state-law claims." *Id*. at 1060. The Eighth Circuit further stated "[i]f the district court decides to exercise supplemental jurisdiction, then this court directs the district court to consider the impact of *Propane En Banc* on the timeliness of the state-law claims." *Id*.

On remand from the Eighth Circuit, Indirect Purchaser Plaintiffs filed a Motion for Order Determining Jurisdiction. (Master Docket Doc. # 306). AmeriGas also filed a Motion for Judgment on the Pleadings, which Ferrellgas joined. (Master Docket Docs. ## 309, 311). In ruling on these Motions, the Court determined that it had jurisdiction over the remaining state-law claims pursuant to the Class Action Fairness Act ("CAFA"). (Master Docket Doc. # 333, pp. 9-11). The Court denied Defendants' Motion after concluding that the Indirect Purchaser Plaintiffs adequately demonstrated standing to seek monetary damages for their state-law claims. (*Id*. at p. 13). The Court explained that it previously ruled that the Indirect Purchaser Plaintiffs had standing in *Ortiz*

5

*I*, a ruling that was reinforced by *Propane En Banc* and *Ortiz III*. (*Id*. at p. 15). Consequently, the Court determined that the Indirect Purchaser Plaintiffs in both *Ortiz* and *Orr* had standing to bring their state-law claims. (*Id*.).

As a result of the Court's previous Order, the following state-law claims remain as pleaded in the CAC and the *Orr* Complaint: Arizona Uniform State Antitrust Act, Ariz. Rev. Stat. Ann. §§ 44-401 *et seq.*; California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 *et seq.*; District of Columbia Antitrust Act, D.C. Code §§ 28-4501 *et seq.*; Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*; Iowa Unfair Competition Law, Iowa Code §§ 553.1 *et seq.*; Kansas Restraint of Trade Act, Kan. Stat. Ann. §§ 50-101 *et seq.*; Maine Monopolies and Profiteering Statute, Me. Stat. tit. 10 § 1101 *et seq.*; Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A §§ 1 *et seq.*; Michigan Antitrust Reform Act, Mich. Comp. Laws §§ 445.771 *et seq.*; Minnesota Antitrust Law of 1971, Minn. Stat. §§ 325D.49 *et seq.*; Mississippi Antitrust Act, Miss. Code Ann. §§ 75-21-1 *et seq.*; Nebraska's Junkin Act, Neb. Rev. Stat. §§ 59-801 *et seq.*; Nevada Unfair Trade Practices Act, Nev. Rev. Stat. §§ 598A.010 *et seq.*; New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. §§ 358a:1 *et seq.*; New Mexico Antitrust Act, N.M. Stat. Ann. §§ 57-1-1 *et seq.*; New York's Donnelly Act, N.Y. Gen. Bus. §§ 340 *et seq.*; North Carolina's antitrust laws, N.C. Gen. Stat. §§ 75-1 *et seq.*; North Dakota Uniform State Antitrust Act, N.D. Cent. Code §§ 51-08-01 *et seq.*; South Dakota's antitrust laws, S.D. Codified Laws §§ 37-1-3.1 *et seq.*; Tennessee's antitrust laws, Tenn. Code Ann. §§ 47-25-101 *et seq.*; Utah Antitrust Act, Utah Code Ann. §§ 76-10-3101 *et seq.*; Vermont Consumer Fraud Act, Vt. Stat Ann. tit. 9 §§ 2451 *et seq.*; West Virginia Antitrust Act, W. Va. Code §§ 47-18-1 *et seq.*; and Wisconsin's antitrust laws, Wis. Stat. §§ 133.01 *et seq.* (*See* Master Docket Doc. # 105, pp. 31-33; Case No. 16-00809-CV-W-GAF Doc. # 1, pp. 39-41). Defendants seek judgment on the

pleadings on all state-law claims as barred by each respective state's statute of limitations. (Master Docket Doc. # 341, pp. 12-29).

## II.    LEGAL STANDARD

After the pleadings have closed, any party may move to have the Court enter judgment on the pleadings. Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings should be granted when, accepting all facts pled by the nonmoving party as true and drawing all reasonable inferences from the facts in favor of the nonmoving party, the movant has clearly established that no material issue of fact remains and that the movant is entitled to judgment as a matter of law." *Schnuck Mkts., Inc. v. First Data Merch. Servs. Corp.*, 852 F.3d 732, 737 (8th Cir. 2017). Generally, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). Therefore, conclusory statements lacking any factual support should be ignored. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the Court may only consider properly pled facts and determine whether the complaint states "a claim for relief that is plausible on its face." *Id.*

## III.    ANALYSIS

The sole issue before the Court is whether the remaining state-law claims are barred by the statute of limitations. Defendants assert that Indirect Purchaser Plaintiffs' state-law claims are barred by the statute of limitations. (Master Docket Doc. # 341, pp. 8-9). Indirect Purchaser Plaintiffs claim that the continuing violations doctrine would be applied to their state law claims. (Master Docket Doc. # 346, pp. 7-8). If the Court determines a state would adopt the continuing violations doctrine, the cause of action would accrue upon each purchase of the price-fixed product. As such, Indirect Purchaser Plaintiffs would be able to recover for purchases made within

7

the statute of limitations dating back from when they filed suit.[4]  Conversely, if the Court finds that a state would not adopt the continuing violations doctrine, the cause of action would have accrued in 2008, when the alleged agreement to reduce the fill level of the tanks occurred.  As such, the claims in these states would be untimely, as the statute of limitations in the overwhelming majority of these states would bar these claims, which were filed in 2014 and in 2016 for the *Orr* Complaint.  (*See* Master Docket Doc. # 1).

When considering issues of state law in an MDL context "the transferee court must apply the state law that would have been applied had the cases not been transferred for consolidation." *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 911 (8th Cir. 2004).  "[F]ederal courts are required to apply state statute of limitations" when considering state law claims. *Settle v. Fluker*, 978 F.2d 1063, 1064 (8th Cir. 1992).  "As a federal court, our role in diversity cases is to interpret state law, not to fashion it."  *Orion Fin. Corp. of S.D. v. Am. Foods Grp., Inc.*, 281 F.3d 733, 738 (8th Cir. 2002).  As such, the Court must determine if the highest court of the state has ruled on the given issue.  *See Ashley Cty., Ark. v. Pfizer, Inc.* 552 F.3d 659, 665 (8th Cir. 2009) ("Our task in this diversity case is to apply [state] law and, where an issue has not been decided by [the highest court in the state], to predict how it would decide the issue.").  "When state law is

---

[4] The applicable date on which the Indirect Purchaser Plaintiffs can seek damages varies based on the length of each state's statute of limitations.  Kansas, Mississippi, New Hampshire, and Tennessee have three-year statutes of limitation. Kan. Stat. Ann. § 60-512(2); Miss. Code Ann. § 15-1-49(1); N.H. Rev. Stat. Ann. § 508:4; Tenn. Code. Ann. § 28-3-105(3).  Arizona, California, the District of Columbia, Florida, Iowa, Massachusetts, Michigan, Minnesota, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Utah, and West Virginia all have four-year statutes of limitation. Ariz. Rev. Stat. Ann. § 44-1410; Cal. Bus. & Prof. Code § 16750.1; D.C. Code § 28-4511; Fla. Stat. § 95.11(3)(f); Iowa Code § 553.16; Mass. Gen. Laws ch. 93 § 13; Mich. Comp. Laws § 445.781; Minn. Stat. § 325D.64; Neb. Rev. Stat. § 25-206; Nev. Rev. Stat. § 598A.220; N.M. Stat. Ann. § 57-1-2; N.Y. Gen. Bus. Law § 340.5; N.C. Gen. Stat. § 75-16.2; N.D. Cent. Cent. Code § 51-08.1-10; S.D. Codified Laws § 37-1-14.4; Utah Code Ann. § 76-10-3117; W. Va. Code § 47-18-11.  Maine, Vermont, and Wisconsin have six-year statutes of limitation.  Me. Stat. tit. 14 § 752; Vt. Stat. Ann. tit. 12 § 511; Wis. Stat. § 133.18(c).

8

ambiguous or undeveloped, 'we look to relevant state precedent, analogous decisions, considered dicta, and any other reliable data to determine how the [highest court in the state] would construe [state] law.'" *Id.* (quoting *United Bank of Iowa v. Indep. Inputs (In re W. Iowa Limestone, Inc.)*, 538 F.3d 858, 866 (8th Cir. 2008)). The Court must predict how the given highest state court would rule in a manner that is foreshadowed by existing precedent. *See Ashley Cty.*, 522 F.3d at 665. As such, the Court must analyze the existing precedent of states of the Indirect Purchaser Plaintiffs' state-law claims.

## A. Harmonization Provisions

Harmonization provisions direct state courts to varying extents a state court should interpret state laws in relation to federal laws. In the case at hand, eleven states have codified mandatory harmonization provisions in their antitrust laws, which require a state court to construe their state antitrust laws in harmony with federal interpretations of the Sherman Act.[5] An additional four jurisdictions have permissive harmonization provisions that allow state courts to consult federal law when interpreting state antitrust laws.[6] The remaining ten states do not have codified harmonization provisions.[7] The effect of each state's harmonization provision, the treatment of such provision by a state's courts, or the caselaw that exists pertinent to harmonization in the absence of such a statute will be considered by the Court when evaluating each state's precedent.

---

[5] The eleven states, discussed below in greater detail, are Florida, Iowa, Kansas, Massachusetts, Michigan, Nebraska, Nevada, New Mexico, Utah, Vermont, and West Virginia. While these states all have mandatory harmonization provisions, there are differences in the wording of these statutes that the Court will take into consideration when analyzing each state's precedent.

[6] The four jurisdictions with codified permissive harmonization statutes are Arizona, District of Columbia, New Hampshire, and South Dakota.

[7] Those ten states are California, Maine, Minnesota, Mississippi, New York, North Carolina, North Dakota, Tennessee, and Wisconsin.

The parties advance divergent arguments on the credence this Court should give to harmonization provisions. The Indirect Purchaser Plaintiffs assert that these provisions must be considered by the Court as they are expressly codified within each state's antitrust laws. (Master Docket Doc. # 364, pp. 15-22). Defendants downplay the importance of these harmonization provisions, instead urging the Court to evaluate the different contexts state courts have recognized or not recognized the continuing violations doctrine. (Master Docket Doc. # 341, pp. 14-20). The Court believes that the effect of the harmonization provisions cannot be minimized given that they are codified within states' antitrust laws. Whether a state court has applied the continuing violations doctrine in another context, absent an express rejection of its application in antitrust law, does not control the Court's analysis of state antitrust and/or consumer protection precedent. Therefore, the Court will give due deference to state legislatures by recognizing the full effect of each state's harmonization provisions.

One line of cases that illustrate states' divergence from federal precedent despite the presence of harmonization statutes is in response to the United States Supreme Court decision, *Illinois Brick Co. v. Illinois*. 431 U.S. 720 (1977). In *Illinois Brick*, the Supreme Court held that only overcharged direct purchasers of a price-fixed product could bring suit under federal antitrust laws. *Id*. at 728-29. The Supreme Court clarified its holding in *Illinois Brick* by explaining that nothing in the Sherman Act or *Illinois Brick* prevented states from allowing indirect purchasers to bring antitrust actions. *California v. ARC Am. Corp.*, 490 U.S. 93, 101-02 (1989). Subsequent to *Illinois Brick*, a number of state high courts refused to apply its rule barring indirect purchaser suits as contrary to the policy behind the state antitrust law before that court. *See, e.g., Lorix v. Crompton Corp.*, 736 N.W.2d 619, 626 (Minn. 2007); *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 447 (Iowa 2002); *Elkins v. Microsoft Corp.*, 817 A.2d 9, 16-17 (Vt. 2002); *Mack v. Bristol-Myers*

10

*Squibb Co.*, 673 So.2d 100, 107 (Fla. Dist. Ct. App. 1996). These cases illustrate that state courts are not inclined to follow federal law when such an interpretation would restrict consumers' ability to recover damages for violations of state-antitrust law. Contrary to *Illinois Brick*, the effect of adopting the continuing violations doctrine would not limit consumers' ability to recover as it delays the accrual of the statute of limitations. As such, while the Court recognizes that states with harmonization provisions do not uniformly follow federal interpretations, it believes that the cases that reject the harmonization of the interpretation of state law federal law do not necessarily apply to the current case.

**B.      Continuing Violations Doctrine Decisions from Federal Courts of Appeal**

In addition to the Eighth Circuit, the Fourth, Sixth, Ninth, and Eleventh Circuits have all addressed the continuing violations doctrine as applied to the Sherman Act. The Fourth Circuit has stated "in cases . . . involving allegations of a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, each overt act that is part of the violation and that injures the plaintiff, *e.g.*, each sale to the plaintiff, starts the statutory period running again.'" *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 290-91 (4th Cir. 2007) (quoting *Klehr*, 521 U.S. at 189). The Sixth Circuit has similarly articulated: "The *Klehr* case . . . simply reiterates that antitrust laws recognize continuing violations and, more precisely, that a new § 1 claim arises each time a company sells a price-fixed product." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009). The Ninth Circuit has recognized the same continuing violations doctrine as articulated in *Klehr*. *See Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086-87 (9th Cir. 2014) (citing *Klehr*, 521 U.S. at 189) (finding the plaintiffs' lawsuit timely because they alleged they purchased price-fixed products within the four-year limitations period). Lastly, the Eleventh Circuit has similarly recognized the continuing violations doctrine as articulated in *Klehr*. *See*

Case 2:14-cv-04164-GAF   Document 172   Filed 08/21/19   Page 11 of 36

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 828-29 (11th Cir. 1999) (relying on *Klehr* to find that plaintiffs sufficiently plead a continuing violation through purchases of a price-fixed product, despite the lack of price-fixing conversations at the time of the purchases). The Court will consider the impact of these circuits' ruling when analyzing the individual state antitrust laws and caselaw.

## C. Do Maine, Vermont, and Wisconsin Claims Relate Back to Original Complaint?

The claims brought under Maine, Vermont, and Wisconsin law are governed by a six-year statute of limitations. Me. Stat. tit. 14 § 752; Vt. Stat. Ann. tit. 12 § 511; Wis. Stat. § 133.18(2). The *Ortiz* Complaint was filed on May 30, 2014 and included allegations that Defendant's conduct violated both federal and state law, including the laws of Maine, Vermont, and Wisconsin. (*See* Case No. 14-00917-CV-W-GAF, Doc. # 1). Indirect Purchaser Plaintiffs filed their CAC on January 29, 2015. (Master Docket Doc. # 105). On October 26, 2015, Indirect Purchaser Plaintiffs filed their First Amended Consolidated Class Action Complaint ("FAC"). (Master Docket Doc. # 198). It was not until the FAC was filed that any named Indirect Purchaser Plaintiffs asserted they resided or purchased propane in Maine, Vermont, or Wisconsin. (*Id.*). The Court has already decided that these state law claims against Ferrellgas could not be found as timely under the relation back theory. *Ortiz II*, 2016 WL 6963058, at *5. Additionally, the Court granted summary judgment as to the claims against AmeriGas because the named plaintiffs failed to establish they purchased propane tanks filled by AmeriGas. *Id.* As stated above, the Eighth Circuit's opinion in *Ortiz III* remanded the current case to this court "to consider . . . the timeliness of the state-law claims." *Ortiz III*, 893 F.3d at 1060. Nothing in *Ortiz III* warrants the Court to reconsider its previous finding as to relation back of the Maine, Vermont, and Wisconsin claims to the *Ortiz* Complaint. Therefore, the Court reaffirms its finding that the Maine, Vermont, and Wisconsin

12

claims do not relate back to the *Ortiz* Complaint. As such, the Court must consider whether these three states would adopt the continuing violations doctrine.[8]

## D.     States That Have Precedent Regarding the Continuing Violations Doctrine

### 1.     California

The Indirect Purchaser Plaintiffs bring claims under California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 *et seq.* The California Supreme Court has not determined if the continuing violations doctrine as articulated in *Propane En Banc* or other federal decision applies to delay accrual of a cause of action under the Cartwright Act. The Supreme Court of California has addressed the issue in a case brought under California's Unfair Competition ("UCL") law. *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871 (Cal. 2013).

In *Aryeh*, a plaintiff, as lessee of printers, alleged that the defendant, lessor of the printers, violated the UCL by charging him for copies that exceeded the maximum allotment of copies on a printer without subtracting the amount of copies made by defendant's employees during servicing of the printers. *Aryeh*, 292 P.3d at 874. The defendant asserted that the claim was barred by the four-year statute of limitations because the lease agreement was entered into more than four years before the plaintiff filed suit. *Id.* First, the California Supreme Court noted that the UCL's statute of limitations did not define when a cause of action accrues. *Id.* at 875. The court went on to explain that a federal court case, *Stutz Motor Car of Am. V. Reebok Intern., Ltd.*, 909 F. Supp. 1353 (C.D. Cal. 1995), erroneously found that common law accrual principals did not apply to

---

[8] The Court recognizes that the Indirect Purchaser Plaintiffs did not assert claims under Massachusetts and New Hampshire law in their CAC. (*See* Master Docket Doc. # 105). Rather, these claims were asserted for the first time in the *Orr* Complaint. (Case No. 16-00809-CV-MD-GAF, Doc. # 1, p. 40). This indicates that the Indirect Purchaser Plaintiffs would only be able to claim damages dating back from 2016 within those two states' statute of limitations period. However, for the reasons discussed below, this does not impact the outcome as the Court finds that neither state would adopt the continuing violations doctrine.

13

UCL claims based on the theory that judicial interpretations of the Sherman Act and Clayton Act apply fully to the Cartwright Act and interpretations of the Cartwright Act are equally applicable to the UCL. *Aryeh*, 292 P.3d at 877. Specifically, the court stated "[i]nterpretations of federal antitrust law are at most instructive, not conclusive, when construing the Cartwright Act, given that the Cartwright Act was modeled not on federal antitrust statutes" and that "though the Cartwright Act and UCL each address aspects of unfair business competition, they have markedly different origins and scopes." *Id*. The court emphasized that the nature of the claim, rather than its form, determines whether common law accrual principals should apply. *Id*. at 878. As such, the court concluded that the UCL was governed by common law accrual rules. *Id*.

The Court then found that the continuous accrual doctrine applied to the case at hand. *Id*. at 880-81. The Court explained:

> The theory is a response to the inequities that would arise if the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach or misconduct; parties engaged in long-standing misfeasance would thereby obtain immunity in perpetuity form suit even for recent and ongoing misfeasance.

*Id*. at 880. The court continued, "[t]o address these concerns, we have long settled that separate, recurring invasions of the same right can each trigger their own statute of limitations." *Id*. The court then explained that in the facts of the case, the duty not to impose unfair charges in monthly bills, was a continuing duty susceptible to recurring breaches. *Id*. at 881. As such, the court concluded that the plaintiff's complaint as it related to the excess charges in the four years preceding the suit were not barred by the statute of limitations. *Id*.

Defendants assert that *Aryeh* application of the continuous accrual doctrine does not apply to the Indirect Purchaser Plaintiff's Cartwright Act claims. (Master Docket Doc. # 341, pp. 21-22). The Indirect Purchaser Plaintiffs counter that *Aryeh*'s reasoning applies equally to the

14

Cartwright Act. (Master Docket Doc. # 346, p. 5). First, while the California Supreme Court has emphasized that the UCL and Cartwright Act are different in origin and scope, the two laws have identical statutes of limitation, both lacking a definition of the word "accrue." *Compare* Cal Bus. & Prof. Code § 16750.1 *with id*. § 17208. Additionally, *Aryeh* court emphasized that the nature of the claim, not its form, is operative in determining if common law accrual rules would apply to statutory claims. *Aryeh*, 292 P.3d at 878. Also like the facts of *Aryeh*, the Indirect Purchaser Plaintiffs have alleged a recurring unfair act, the sale of propane tanks at a supracompetitive price. The *Aryeh* court rejected the argument that the act of entering the agreement was the only breach of duty by the defendants by stating that the duty not to impose unfair monthly charges was continuous, susceptible to recurring breaches. *Id*. at 881. The similarity of the UCL and Cartwright Act statutes of limitation and the reasoning of *Aryeh* foreshadow that the California Supreme Court would apply the theory of continuous accrual to the Indirect Purchaser Plaintiff's Cartwright Act claims. As such, the Court finds that the Cartwright Act claims are timely.

### 2. *Maine*

The Indirect Purchaser Plaintiffs have brought claims under Maine Monopolies and Profiteering Statute ("MMPS"), Me. Stat. tit. 10 §§ 1101 *et seq*. In *McKinnon v. Honeywell Int'l, Inc.*, 977 A.2d 420 (Me. 2009), the Supreme Judicial Court of Maine ruled directly on the issue of the applicability of the continuing violations doctrine to the MMPS. In *McKinnon*, the plaintiff sued the defendant in 2004 for conduct related to four purchases of thermostats, three purchased in 1986 and the fourth sometime around 2001. *Id*. at 422. The anti-competitive conduct tied to the sale of the thermostats was the defendant's misrepresentations regarding its intellectual property, alleged to have occurred from the 1960s to the 1980s. *Id*. at 423. The *McKinnon* court analyzed when the plaintiff's cause of action accrued and whether the continuing violation doctrine

15

tolled the statute of limitations. The court determined that the plaintiff's claim as to the first three purchases accrued in 1986, when he purchased the thermostats. *Id*. at 425. In discussing the tolling of the statute of limitations, the court stated: "We decline to adopt the continuing violations doctrine in this case arising from a 1986 occurrence, and in which the statute of limitations period expired in 1992, nine years prior to [the plaintiff's] subsequent purchase of a thermostat in New Hampshire. The New Hampshire purchase did not revive the cause of action based on the 1986 purchases in Maine pursuant to the continuing violations doctrine." *Id*. The court then found that the plaintiff's subsequent 2001 purchase was not time-barred because suit was filed within the six-year statute of limitations. *Id*. at 426.

While Defendants assert that *McKinnon* stands for the proposition that the Supreme Judicial Court of Maine has categorically rejected the continuing violations doctrine as applied to the MMPS, they misconstrue the court's analysis. The *McKinnon* court stated the continuing violations doctrine could not be used to revive a claim that accrued outside of the limitations period. *Id*. at 425. However, by finding that the plaintiff's purchase that was completed within six years prior to the filing of suit, the *McKinnon* court recognized that a cause of action brought under the MMPS accrues upon purchase of the product sold anticompetitively. As such, Maine precedent displays that the Indirect Purchaser Plaintiff's claims under the MMPS are timely.[9]

E. **States That Have Codified Mandatory Harmonization Provisions**

The following states have mandatory harmonization provisions codified in the laws that contain Indirect Purchaser Plaintiffs' claims: Florida, Iowa, Kansas, Massachusetts, Michigan,

---

[9] As previously discussed, only these claims remain against Ferrellgas, as the named representative from Maine failed to establish he purchased any propane tanks filled by AmeriGas.

Case 2:14-cv-04164-GAF   Document 172   Filed 08/21/19   Page 16 of 36

Nebraska, Nevada, New Mexico, Utah, Vermont, and West Virginia.[10]  The Court will address the effect of these provisions when analyzing each state's precedent.

    1.    *Florida*

    Florida's Deceptive and Unfair Trade Practices Act ("FDTPA") contains the following provision: "It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1)." Fla. Stat. § 501.204(2).  This provision directs Florida courts to consider federal precedent when construing subsection one of the same statute, which states: "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive practices in the conduct of any trade or commerce are hereby declared unlawful."  Reading these two statutes together supports the conclusion that the Florida Legislature intended for Florida courts to follow federal court interpretations of the Federal Trade Commission Act ("FTCA"), but not necessarily the Sherman Act, when determining what substantive conduct is prohibited under the FDTPA.  *See Mack*, 673 So.2d at 104-05 (explaining that Fla. Stat. Ann. § 501.204(2) requires courts to give due deference to federal interpretations of the FTCA as to what unfair methods of competition and commerce are unlawful).  The Florida District Court of Appeal has stated that the FDTPA encompasses antitrust violations.  *See id.* (citing *FTC v. Ind. Fed. of Dentists*, 476 U.S. 447, 454-55 (1986)) (explaining that the phrase "unfair method of competition" within the FDTPA included antitrust violations). However, the *Mack* court rejected the federal interpretations of the Sherman Act by not adopting

---

[10] Fla. Stat. § 501.204(2); Iowa Code § 553.2; Kan. Stat. Ann. § 50-163(b); Mass. Gen. Law. ch. 93 § 1; Mich. Comp. Laws § 445.784(2); Neb. Rev. Stat. § 59-829; Nev. Rev. Stat. § 598A.050; N.M. Stat. Ann. § 57-1-15; Utah Code Ann. § 76-10-3118; Vt. Stat. Ann tit 9 § 2453(b); W. Va. Code § 47-18-16.

*Illinois Brick* to bar indirect purchaser suits under the FDTPA. *Id*. at 107. The *Mack* court went on to explain there was not a lack of harmony between the FDTPA, which allows indirect purchaser suits, and the Florida Antitrust Act, which bars indirect purchaser suits pursuant to *Illinois Brick*. *Id*. at 108. This indicates that Florida courts would not necessarily follow federal interpretations of the Sherman Act when analyzing accrual principles under the FDTPA. As such, Florida precedent does not foreshadow the Florida Supreme Court applying the continuing violations doctrine to FDTPA claims. Therefore, the FDTPA claims are untimely.

> 2.    *Iowa*

The Iowa Supreme Court has not determined if the continuing violations doctrine would apply to claims brought under its antitrust laws. Iowa's antirust law provides that it "shall be construed to complement and be harmonized with the applied laws of the United States which have the same or similar purpose as this chapter." Iowa Code Ann. § 553.2. "When interpreting Iowa antitrust statutes, Iowa courts are required by section 553.2 to give considerable weight to federal cases construing similar sections of the Sherman Act." *See Davies v. Genesis Med. Ctr. Anesthesia & Analgesia, P.C.*, 994 F. Supp. 1078, 1103 (S.D. Iowa 1998) (collecting cases from the Iowa Supreme Court and Iowa Court of Appeals). In explaining the purpose of harmonizing state and federal antitrust law, the Iowa Supreme court has stated "our legislature clearly announced the purpose of the harmonization statute by stating it is designed to achieve uniform application of state and federal laws by prohibiting monopolistic practices." *Comes*, 646 N.W.2d at 446. "The purpose behind both state and federal antitrust law is to apply a uniform standard of conduct so that businesses will know what is acceptable conduct and what is not acceptable conduct." *Id*. The Iowa Supreme Court has discussed the harmonization provision in the context of the overall purpose if its antitrust act to "assur[e] customers the benefits of price competition." *Id*. at 447. In

18

*Comes*, the Iowa Supreme Court rejected the argument that the harmonization provision mandated the adoption of *Illinois Brick* because it contravened the purpose of Iowa's antitrust laws. *See id.* ("In order for us to agree with Microsoft that the harmonization statute requires us to prohibit suits by indirect consumers, we must accept the fact that real victims–those who purchase goods and pay the overcharge–cannot recover. This result would overwhelmingly defeat the purpose of the Iowa Competition Law.").

While the continuing violations doctrine is one that governs the applicability of the statute of limitations rather than a doctrine related to substantive conduct, the Iowa Supreme Court's discussion of the purpose of the Iowa Competition Act shows the Court's recognition of the importance of protecting consumers who purchase overcharged goods. As such, the harmonization provision and the indication from Iowa state courts that they are required to interpret state antitrust laws in harmony with the Sherman Act so long as that interpretation does not contravene the policy of the Iowa Antitrust Act reasonably foreshadow that the Iowa Supreme Court would adopt the continuing violations doctrine as articulated in *Propane En Banc*, which was decided in the circuit that embraces Iowa. As such, the Court finds that the Indirect Purchaser Plaintiffs' claims under Iowa law are timely.

3. *Kansas*

The Kansas Supreme Court has not determined if the continuing violations doctrine would apply to claims brought under its antitrust laws. Kan. Stat. Ann. § 50-163(b) provides "the Kansas restraint of trade act shall be construed in harmony with ruling judicial interpretations of federal antitrust law by the United States supreme court." As was explained by the Eighth Circuit in *Propane En Banc*, the Supreme Court's discussion in *Klehr* regarding the continuing violations doctrine is dicta. *Propane En Banc*, 860 F.3d at 1064-66. The Eighth Circuit's discussion of the

19

persuasiveness of Supreme Court dicta pertained to its effect in federal court. Regarding dicta, the Kansas Supreme Court has stated the following: "Nobody is bound by dictum, not even . . . the court itself when it may be further enlightened by briefs and arguments of counsel and mature consideration and when it becomes a question squarely presented for decision." *Law v. Law Co. Bldg. Assocs.*, 289 P.3d 1066, 1074 (Kan. 2012) (internal citation and quotations omitted). Based on this statement from the Kansas Supreme Court, the Court is unable to predict that it would adopt the continuing violations doctrine. Absent such indication, the Court finds that the claims under the Kansas Restraint of Trade Act are untimely.

### 4. *Massachusetts*

The Massachusetts Supreme Court has not decided if the continuing violations doctrine applies to claims brought under the Massachusetts Consumer Protection Act ("MCPA"). The MCPA, which is not an antitrust act, states "[i]t is the intent of the legislature that in construing paragraph (a) of this section [the section that makes unfair methods of competition or deceptive acts or practices unlawful] . . , the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act." Mass. Gen. Laws ch. 93A § 2. The corresponding provision of the FTCA states "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(1). The language of this harmonization provision of the MCPA is a mandate to follow federal law interpreting substantive unlawful conduct under the FTCA, not to follow interpretations of the Sherman Act's statute of limitations. As such, Massachusetts precedent and statutory provisions do not foreshadow the Massachusetts Supreme Court adopting the continuing violations doctrine as applied to the MCPA. Therefore, the claims brought under the MCPA are untimely.

20

5.    *Michigan*

The Michigan Supreme Court has not determined if the continuing violations doctrine applies to claims brought under its antitrust laws.  Mich. Comp. Laws § 445.784(2) states: "It is the intent of the legislature that in construing all sections of this act, the courts shall give due deference to interpretations given by federal courts to comparable antitrust statutes . . . ."  The Michigan Court of Appeals has cited this statute to discuss Supreme Court and Sixth Circuit interpretations of the Sherman Act.  *Manitou N.A., Inc. v. McCormick Int'l, LLC*, No. 324063, 2016 WL 439354, at *3 (Mich. Ct. App. Feb. 2, 2016); *Salmon v. City of Cadillac*, No. 263586, 2005 WL 3416119, at *5 (Mich. Ct. App. Dec. 13, 2005); *Mercy Mem'l Hosp. v. Porter*, No. 212223, 1999 WL 33326821, at *3 (Mich. Ct. App. Dec. 21, 1999).  As stated previously, the Sixth Circuit has recognized the continuing violations doctrine in construing the Sherman Act.  *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 902.  Based on the harmonization provision and Michigan courts' reliance on Sixth Circuit law when interpreting its antitrust statutes, the Court believes that Michigan precedent foreshadows the Michigan Supreme Court adopting the continuing violation doctrine as articulated by the Sixth Circuit.  Therefore, claims brought under the Michigan Antitrust Reform Act are timely.

6.    *Nebraska*

The Nebraska Supreme Court has not determined if the continuing violations doctrine applies to Junkin Act claims.  The Junkin Act provides that when a provision that "is the same as or similar to the language of a federal antitrust law, the courts of this state in construing such sections or chapter shall follow the construction given to the federal law by the federal courts."  Neb. Rev. Stat. § 59-829.  Regarding the harmonization of the Junkin Act with the Sherman Act, the Nebraska Supreme Court has stated, "[i]t is important to achieve and maintain a consistency

21

in defining the types of business activity that are to be prohibited as unlawful. Harmonizing state law with federal law and its interpretations by federal courts will achieve predictability as to the practices that are prohibited." *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 38 (Neb. 2004). However, the Junkin Act does not contain a statute of limitations provision. Rather, Junkin Act claims are governed by a catchall four-year statute of limitations. Neb. Rev. Stat. § 25-206. Additionally, the Nebraska Supreme Court has stated the purpose of the harmonization provision is to ensure consistency in the "types of business activity" that are unlawful under the act, not harmonize when a plaintiff's cause of action accrues. *Id.* As such, Nebraska precedent does not foreshadow the Nebraska Supreme Court applying the continuing violations doctrine to Junkin Act Claims. Therefore, the claims brought under Nebraska's Junkin Act are untimely.

7. *Nevada*

Nevada's Supreme Court has not determined if the continuing violations doctrine applies to Nevada Unfair Trade Practices Act ("NUTPA"). The NUTPA provides "[t]he provisions of this chapter shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes." Nev. Rev. Stat. § 598A.050. The Nevada Supreme Court has recognized the NUTPA's harmonization provision when analyzing standing under the act. *Nev. Recycling & Salvage, Ltd. v. Reno Disposal Co., Inc.*, 423 P.3d 605, 607 (Nev. 2018). As stated above, the Ninth Circuit has adopted the continuing violation theory as applied to Sherman Act claims. *Oliver*, 751 F.3d at 1086-87. Additionally, every circuit to consider the issue as applied to the Sherman Act has adopted the continuing violations theory, thus indicating that it is the prevailing judicial interpretation of the issue. These considerations reasonably foreshadow that the Nevada Supreme Court would apply the continuing violations to the NUTPA. Therefore, the claims brought under the NUTPA are timely.

22

*8.      New Mexico*

The New Mexico Supreme Court has not decided if the continuing violations doctrine applies to New Mexico Antitrust Act ("NMAA") claims. The NMAA's harmonization provision states "the Antitrust Act shall be construed in harmony with judicial interpretations of the federal antitrust laws. This construction shall be made to achieve uniform application of the state and federal laws prohibiting restraints of trade and monopolistic practices." N.M. Stat. Ann. § 57-1-15. "In the absence of New Mexico decisions directly on point, we look to federal cases involving antitrust arrangements under Section 1 of the Sherman Act." *Smith Mach. Corp. v. Hesston, Inc.*, 694 P.2d 501, 505 (N.M. 1985) (quoting N.M. Stat Ann. § 57-1-15). While not expressly adopted, the Tenth Circuit has acknowledged the continuing violations doctrine in Sherman Act claims and emphasized that the deciding factor in its application is whether the agreeing parties' initial decision did or did not require further action. *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1089-90 (10th Cir. 2006) (citing *Klehr*, 521 U.S. at 189). Similarly, every other Circuit that has considered the issue has expressly adopted the continuing violations doctrine. These considerations foreshadow that the New Mexico Supreme Court would apply the continuing violations doctrine as articulated in *Champagne Metals* and *Propane En Banc*. Therefore, the claims brought under the NMAA are timely.

*9.      Utah*

Utah's Supreme Court has not decided if the continuing violation theory applies to Utah Antitrust Act ("UAA"). The UAA's harmonization provision states: "The Legislature intends that the courts, in construing this act, will be guided by interpretations given by the federal courts to comparable federal antitrust statutes and by other state courts to comparable state antitrust statutes." Utah Code Ann. § 76-10-3118. The Utah Supreme Court has cited this statute as support

Case 2:14-cv-04164-GAF   Document 172   Filed 08/21/19   Page 23 of 36

to reference federal law interpreting the Sherman Act in the absence of a decision from that court. *See Evans v. Utah*, 963 P.2d 177, 181 (Utah 1998). As is the outcome in New Mexico, Utah's precedent foreshadows that the Utah Supreme Court would adopt the Tenth Circuit's articulation of the continuing violations doctrine. Therefore, the claims brought under the UAA are timely.

      *10.    Vermont*

      The Vermont Supreme Court has not determined if the continuing violations doctrine would apply to claims brought under the Vermont Consumer Fraud Act ("VCFA"). Vt. Stat. Ann. tit. 9 § 2453(b) states that when interpreting the act "the courts of this State will be guided by the construction of similar terms contained in Section 5(a)(1) of the Federal Trade Commission Act as from time to time amended by the Federal Trade Commission and the courts of the United States." This provision is silent on whether interpretations of the Sherman Act, a federal antitrust law, should apply to interpretations of VCA. In fact, the Supreme Court of Vermont has rejected the argument that the harmonization provision includes interpretations of the Sherman Act. *See Elkins*, 817 A.2d at 16-17 (explaining that construction of the Sherman Act in *Illinois Brick* did not apply to interpretation of the VCFA). Based on Vermont precedent, the Court does not believe that the Vermont Supreme Court would apply the continuing violations doctrine to the VCFA. Therefore, the claims brought under the VCFA are untimely.

      *11.    West Virginia*

      The West Virginia Supreme Court has not determined if the continuing violations doctrine would apply to claims brought under the West Virginia Antitrust Act ("WVATA"). The WVATA states "[t]his article shall be construed liberally and in harmony with ruling judicial interpretations of comparable federal antitrust statutes." W. Va. Code § 47-18-16. The West Virginia Supreme Court has cited this provision when determining what constitutes an unlawful restraint of trade

under the WVATA. *Princeton Ins. Agency, Inc. v. Erie Ins. Co.*, 690 S.E.2d 587, 592-93 (W. Va. 2009). When determining the applicability of the harmonization provision, the West Virginia Supreme Court has explained that interpretations of "terms of art" by federal courts in the Sherman Act are incorporated into the WVATA. *Kessel v. Monongalia Cty. Gen. Hosp. Co.*, 648 S.E.2d 366, 379 (W. Va. 2007). The WVATA's statute of limitations states "[f]or the purpose of this section, a cause of action for a continuing violation is deemed to arise at any time during the period of such violation." *Id.* The phrase "continuing violation" is a term of art that has been defined similarly to *Propane En Banc* by the Fourth Circuit when interpreting the Sherman Act. *In re Cotton Yarn Antitrust Litig.*, 505 F.3d at 290-91. As such, these considerations foreshadow that the West Virginia Supreme Court would adopt the continuing violations doctrine as defined by the Fourth Circuit's interpretation of the Sherman Act. Therefore, the claims brought under the WVATA are timely.

**F.    States That Have Codified Permissive Harmonization Provisions**

The following jurisdictions have permissive harmonization provisions codified in their antitrust and/or consumer protection acts: Arizona, District of Columbia, New Hampshire, and South Dakota.[11] The Court will consider the impact of these harmonization provisions when analyzing the precedent of each state in turn.

*1.    Arizona*

The Arizona Supreme Court has not determined if the continuing violations doctrine applies to claims brought under the Arizona Uniform Antitrust Act ("AUAA"). Ariz. Rev. Stat. § 44-1412 states: "It is the intent of the legislature that in construing this article, the courts may use

---

[11] Ariz. Rev. Stat. Ann. § 44-1412; D.C. Code § 28-4515; N.H. Rev. Stat. Ann. § 356:14; S.D. Codified Laws § 37-1-22.

as a guide interpretations given by the federal courts to comparable antitrust statutes." The Arizona Court of Appeals has cited this provision along with previous state caselaw as support to look to federal caselaw, specifically the Ninth Circuit, as a guide to interpreting provisions of the AUAA. *See Bunker's Glass Co. v. Pilkington PLC*, 47 P.3d 1119, 1126 (Ariz. Ct. App. 2002) ("We acknowledge that Arizona appellate courts have typically followed federal case law in antitrust matters."); *All Am. Sch. Supply Co. v. Slavens*, 625 P.2d 324, 325 (Ariz. 1981) ("As indicated in the construction of the former [antitrust] act, the interpretation of the federal statutes on the same subject are persuasive."); *Wedgewood Inv. Corp. v. Int'l Harvester Co.*, 613 P.2d 620, 623 (Ariz. Ct. App. 1979) ("The Arizona legislature clearly intended to strive for uniformity between federal and state antitrust laws."). Regarding the statute of limitations for the AUAA, the language of the statute is substantially similar to the Sherman Act's statute of limitations. *Compare* Ariz. Rev. Stat. Ann. § 44-1410 ("An action under § 44-1407 to recover a civil penalty is barred if it is not commenced within four years after the cause of action accrues.") *with* 15 U.S.C. § 15b ("An action to enforce any cause of action . . . shall be forever barred unless commenced within four years after the cause of action accrued."). Given these considerations, Arizona precedent foreshadows that the Arizona Supreme Court would adopt the Ninth Circuit's reasoning in *Oliver* and apply the continuing violations doctrine to claims brought under the AUAA. Therefore, the claims brought under the AUAA are timely.

### 2. District of Columbia

The District of Columbia also has a codified permissive harmonization provision. D.C. Code § 28-4515. Defendants argue that the District of Columbia Court of Appeals would not apply the continuing violations doctrine to claims brought under its antitrust laws because it has only been applied in limited contexts unrelated to antitrust law. (Master Docket Doc. # 341, p. 17).

Indirect Purchaser Plaintiffs do not directly respond to this argument and cite a single District of Columbia case in a footnote–a case decided in 1907. The Court does not find this citation persuasive to rebut Defendants' argument that the District of Columbia would not apply the continuing violations doctrine to claims brought under its antitrust laws. As such, the Court finds that the District of Columbia claims are untimely.

3.    *New Hampshire*

The New Hampshire Supreme Court has not determined if the continuing violations doctrine applies to claims brought under the New Hampshire Consumer Protection Act ("NHCPA"). The NHCPA states: "It is the intent of the legislature that in any action or prosecution under this chapter, the courts may be guided by the interpretation and construction given to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), by the Federal Trade Commission and the federal courts." N.H. Rev. Stat. Ann. § 358-A:13. The New Hampshire Supreme Court has noted that the NHCPA's harmonization provision allows state courts to rely on federal court cases decided under the Sherman Act due to the similarity of subject matter covered by the FTCA. *See Green Mountain Realty Corp. v. Fifth Estate Tower, LLC*, 13 A.3d 123, 127-28 (N.H. 2010) (applying the *Noerr-Pennington* doctrine as articulated under the Sherman Act and applied to FTCA claims, to NHCPA claims). While the New Hampshire Supreme Court has applied a doctrine from the Sherman Act to NHCPA claims, it did so based on that doctrine's application to FCTA claims by federal courts. *See id.* at 130-31 (holding that *Noerr-Pennington* applied to NHCPA claims based on its application of the doctrine to FTCA claims by federal courts). Conversely, the Court is unaware of any New Hampshire precedent that recognizes the continuing violations doctrine, as articulated under the Sherman Act, has been applied to the FTCA by federal courts. Given this lack of clear guidance from existing precedent, the Court

cannot predict that the New Hampshire Supreme Court would apply the continuing violations doctrine to NHCPA claims. Therefore, the claims brought under the NHCPA are untimely.

>    4.    *South Dakota*

The South Dakota Supreme Court has not determined if the continuing violations doctrine applies to claims brought under the state's antitrust laws. South Dakota's antitrust act provides: "It is the intent of the Legislature that in construing this chapter, the courts may use as a guide interpretations given by federal or state courts to comparable antitrust statutes." S.D. Codified Laws § 37-1-22. The South Dakota Supreme Court has explained that "because of the similarity of language between federal and state antitrust statutes and because of the legislative suggestion for interpretation found in SDCL 37-1-22, great weight should be given to the federal cases interpreting the federal statute." *Byre v. City of Chamberlain*, 362 N.W.2d 69, 74 (S.D. 1985). The statute of limitations under South Dakota's antitrust act is substantially similar to the Sherman Act's statute of limitations. *Compare* S.D. Codified Laws § 37-1-14.4 ("An action . . . to recover a civil penalty is barred if it is not commenced within four years after the claim for relief accrues.") *with* 15 U.S.C. § 15b ("An action to enforce any cause of action . . . shall be forever barred unless commenced within four years after the cause of action accrued."). Given the substantial similarity of the two statutes and the South Dakota Supreme Court's willingness to accord greater weight to federal precedent when statutory language is similar, South Dakota precedent foreshadows that its high court would adopt the continuing violations doctrine as articulated in *Propane En Banc*. Therefore, the claims brought under South Dakota's antitrust laws are timely.

**G.    States That Do Not Have Codified Harmonization Provisions or High Court Decisions**

The following states do not have harmonization provisions or high court decisions regarding the continuing violations doctrine in regard to state antitrust or consumer protection

laws: Minnesota, Mississippi, New York, North Carolina, North Dakota, Tennessee, and Wisconsin.

### 1. Minnesota

While the Minnesota Antitrust Law is silent as to the role of federal interpretations of the Sherman Act in determining issues of state law, the Court of Appeals of Minnesota has stated that "Minnesota courts have consistently held that Minnesota antitrust law is to be interpreted consistently with the federal courts' construction of federal antitrust law." *State ex rel. Humphrey v. Alpine Air Prods., Inc.*, 490 N.W.2d 888, 894 (Minn. Ct. App. 1992). The Minnesota Supreme Court has also stated that "[b]oth state and federal antitrust laws are to be broadly construed." *Minn. Twins P'ship v. State ex rel. Hatch*, 592 N.W.2d 847, 851 (Minn. 1999). Additionally, Minnesota has a codified version of the continuing violations doctrine, which states "a cause of action for a continuing violation is deemed to arise at any time during the period of the violation." Minn. Stat. § 325D.64. However, the Minnesota Supreme Court has recognized that the goal of harmonization did not support reliance on federal precedent regarding standing to sue. *See Lorix*, 736 N.W.2d at 626 ("The desire for harmony between federal and state antitrust law relates more to prohibited conduct than to who can bring a lawsuit."). While the issue of accrual is more similar to the issue standing than the definition of substantive conduct governed by the antitrust acts, the express codification of the continuing violations doctrine and the Minnesota Supreme Court's desire to interpret its own antitrust law broadly foreshadows that the Minnesota Supreme Court would follow federal law regarding accrual of a cause of action under the Sherman Act. As such the Court believes that Minnesota courts would adopt the continuing violations doctrine as articulated in *Propane En Banc*, as the Eighth Circuit embraces Minnesota. Therefore, the Minnesota Antitrust Law claims are timely.

29

2.      *Mississippi*

Mississippi's Antitrust Act does not have a codified harmonization provision nor statute of limitations.  *See* Miss. Code Ann. §§ 75-21-1 *et seq*.  Rather, Mississippi antitrust claims are governed by a three-year statute of limitation for "[a]ll actions for which no other period of limitations is prescribed."  Miss. Code Ann. § 15-1-49(1); *see Carder v. BASF Corp.*, 919 So.2d 258, 261 (Miss. Ct. App. 2005) (affirming trial court's dismissal of state antitrust case based on Miss. Code Ann. § 15-1-49).  This same statute of limitations contains a discovery rule, which allows for a plaintiff to toll the statute of limitations under the doctrine of fraudulent concealment.  *Carder*, 919 So.2d at 261-62.  However, the Court is not aware of a Mississippi decision that discusses the continuing violation doctrine in any context.  Given the uncertainty in Mississippi caselaw, the Court is unable to find that current precedent foreshadows the Mississippi Supreme Court adopting the continuing violation doctrine under the Mississippi Antitrust Act.  Accordingly, the claims brought under Mississippi law are untimely.

3.      *New York*

In New York, the Donnelly Act does not contain a harmonization provision.  *See* N.Y. Gen. Bus. Law §§ 340 *et seq*.  The New York Court of Appeals, New York's highest court, also has not determined if the continuing violations doctrine applies to claims brought under the Donnelly Act.  However, "the present Donnelly Act has been considered to have been modeled after the Sherman Act."  *New York v. Mobil Oil Corp.*, 344 N.E.2d 357, 359 (N.Y. 1976).  Because the Donnelly Act was modelled on the Sherman Act, the New York Court of Appeals has held that the Donnelly Act should be construed in light of federal precedent.  *See X.L.O. Concrete Corp. v. Rivergate Corp.*, 634 N.E.2d 158, 161 (1994) (explaining that the Donnelly Act "should generally be construed in

light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such result").

Indirect Purchaser Plaintiffs cite *Global Reinsurance Corp.-U.S. Branch v. Equitas Ltd.*, 867 N.Y.S.2d 16 (Table), 2008 WL 2676805 (N.Y. Sup. Ct. 2008), as support that New York courts would apply the continuing violations doctrine to Donnelly Act claims. (Master Docket Doc. # 346, p. 12). In *Global Reinsurance*, the Supreme Court for New York County, New York, a court of original instance, stated that because the Donnelly Act was modeled after the Sherman Act, it would follow federal courts' analysis of the Sherman Act and the Clayton Act. *See id.* at *8 (citing *New York v. Rattenni*, 613 N.E.2d 155, 171 (N.Y. 1993)). The court went on to determine that the plaintiffs could seek damages for injuries that occurred within four years of filling suit pursuant to the continuing violations doctrine. *See id.* at *10 (explaining that each overt act that is part of the defendant's violation starts the statute of limitations) (citing *Zenith Radio Crop. v. Hazeltine Research, Inc.*, 401 U.S. 321, 328 (1971); *Klehr*, 521 U.S. at 189-90). While this case does show a New York court looking to the same United States Supreme Court precedent relied on by the Eighth Circuit in *Propane En Banc* to apply the continuing violations doctrine, Indirect Purchaser Plaintiffs identify no other New York case to support their assertion that the New York Court of Appeals would apply the continuing violations doctrine to Donnelly Act claims. In the absence of a more express statement by the New York Court of Appeals beyond that the Donnelly Act should "generally be construed in light of Federal precedent," and any intermediate or high court opinion discussing the interpretation of the Donnelly Act's statute of limitations in relation to the Sherman Act, the Court cannot find that current state precedent foreshadows the adoption of the continuing violations doctrine. As such, the Court finds that the Donnelly Act claims are untimely.

31

4. *North Carolina*

North Carolina's antitrust laws do not contain a harmonization provision. *See* N.C. Gen. Stat. §§ 75-1 *et seq*. However, the North Carolina Court of Appeals has stated the following: "Chapter 75, entitled 'Monopolies, Trusts and Consumer Protection,' was modeled after the Sherman Act and many of Chapter 75's provisions closely resemble it." *DKH Corp. v. Rankin-Patterson Oil Co., Inc.*, 506 S.E.2d 256, 258 (N.C. Ct. App. 1998). Additionally, a version of the continuing violations doctrine is codified as follows: "Where the things prohibited in this Chapter are continuous, then in such event, after the first violation of any of the provisions hereof, each weak that the violation of such provision shall continue shall be a separate offense." N.C. Gen. Stat. § 75-8. "'A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.'" *Williams v. Blue Cross Blue Shield of N.C.*, 581 S.E.2d 415, 423 (N.C. 2003) (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)).

In *Richardson v. Bank of Am., N.A.*, 643 S.E.2d 410 (N.C. Ct. App. 2007), the North Carolina Court of Appeals discussed N.C. Gen. Stat. § 75-8 by contrasting two different attempts at pleading a continuing violation under the statute. *Id*. at 422-23. The appeals court rejected the plaintiff's argument that continual inflated payments of mortgages were not continual violations, but rather effects of the initial loan agreements. *Id*. Conversely, the appeals court noted that in *Thomas v. Petro-Wash, Inc.*, 429 F. Supp. 808 (M.D.N.C. 1997), the statute of limitations began to run upon every sale made to plaintiffs pursuant to an allegedly unlawful lease-leaseback agreement between the defendants because each sale was an overt act. *Richardson*, 643 S.E.2d at 422. Further, the Fourth Circuit, which embraces North Carolina, has adopted the continuing violations doctrine to the Sherman Act. The North Carolina Court of Appeals' analysis of the codified continuing violations doctrine, coupled with Fourth Circuit precedent, foreshadows that

the North Carolina Supreme Court would apply the continuing violations doctrine as articulated in *In re Cotton Yarn Antitrust Litig*. As such, the claims brought under North Carolina law are timely.

  *5. North Dakota*

  The North Dakota Uniform State Antitrust Act ("NDUSAA") does not contain a harmonization provision. *See* N.D. Cent. Code §§ 51-08.1-01 *et seq.* While not expressly endorsed, the North Dakota Supreme Court has used federal law to determine the evidence needed to prove a tying agreement violated the NDUSAA. *See Ag Acceptance Corp. v. Glinz*, 684 N.W.2d 632, 639 (N.D. 2004) (referencing federal caselaw to articulate what is necessary to establish an antitrust violation based upon an illegal tying). Additionally, the NDUSAA statute of limitations is similar to the Sherman Act's statute of limitations. *Compare* N.D. Cent. Code § 51-08.1-10 ("An action under section 51-08.1-07 to recover a civil penalty is barred if it is not commenced within four years after the claim for relief accrues.") *with* 15 U.S.C. § 15b ("An action to enforce any cause of action . . . shall be forever barred unless commenced within four years after the cause of action accrued."). While not in the antitrust context, the North Dakota Supreme Court has looked to federal-court analysis of federal statutes of limitation when the operative language in the statutes is identical. *See State ex re. N.D. Dep't of Labor v. Matrix Props., Corp.*, 770 N.W.2d 290, 293-94 (N.D. 2009). Because the operative language of the statutes of limitation of the NDUSAA and the Sherman Act are similar, the North Dakota Supreme Court would likely look to federal caselaw interpreting the Sherman Act's statute of limitations. As a state embraced by the Eighth Circuit, North Dakota would likely apply the continuing violations doctrine as explained in *Propane En Banc*. Therefore, current precedent foreshadows that North Dakota would find the Indirect Purchaser Plaintiff's claims timely under the NDUSAA.

6.      *Tennessee*

The Tennessee Supreme Court has not determined if the continuing violation doctrine would apply to toll the statute of limitations for claims brought under the Tennessee Trade Practices Act ("TTPA"). The TTPA also does not contain a harmonization provision. *See* Tenn. Code Ann. §§ 47-25-101 *et seq*. Additionally, the statute of limitations for TTPA claims is not specifically codified amongst the other antitrust statutes. *See id*. Rather, claims under the TTPA are governed by a three-year statute of limitations as claims "based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered . . . when no other time of limitation is fixed by the statute creating such liability." Tenn. Code Ann. § 28-3-105(3). Tennessee courts have recognized that this statute of limitations may be subject to the discovery rule and the fraudulent concealment doctrine. *See Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 106 (Tenn. 2006); *Benton v. Snyder*, 825 S.W.2d 409, 414 (Tenn. 1992). However, the Court is unaware of any Tennessee court opinion that has recognized the continuing violation doctrine as applied to TTPA claims or to this statute of limitations. In the absence of any state precedent to foreshadow the Tennessee Supreme Court apply the continuing violations doctrine to TTPA claims, the Court finds that those claims are untimely.

7.      *Wisconsin*

Wisconsin's antitrust laws do not contain a harmonization provision. *See* Wis. Stat. §§ 133.01 *et seq*. The Wisconsin Supreme Court has stated that its antitrust act "is Wisconsin's mini-Sherman Act." *Grams v. Boss*, 294 N.W.2d 473, 477 (Wis. 1980) *overruled on other grounds by* 735 N.W.2d 448. Additionally, the Wisconsin Supreme Court has sated that Wis. Stat. § 133.01 was intended as a reenactment of the first two sections of the Sherman Act. *Id*. at 480. The Wisconsin Supreme Court has also explained that it adheres to federal-court interpretations of

34

antitrust law when construing state antitrust law. *See Prentice v. Title Ins. Co. of Minn.*, 500 N.W.2d 658, 662 (Wis. 1993) (quoting *Wisconsin v. Waste Mgmt. of Wis., Inc.*, 261 N.W.2d 147, 153 n.12 (Wis. 1978)) ("We have stated many times that construction of sec. 133.01(1) [now Wis. Stat. § 133.03(1)] is controlled by federal decisions under the Sherman Act.");

While it is clear that Wis. Stat. § 133.03(1)-(2) are analogs to the Sherman Act, the length of the Wisconsin Antitrust Act's statute of limitations differs from the Sherman Act's. *Compare* Wis. Stat. § 133.18(2) ("A civil action for damages or recovery of payments under this chamber is barred unless commenced within 6 years after the cause of action accrued.") *with* 15 U.S.C. § 15(b) ("An action to enforce any cause of action . . . shall be forever barred unless commenced within four years after the cause of action accrued."). Further, the Wisconsin Supreme Court has rejected the continuing violations doctrine in the antitrust context as applied to the notice requirement statutorily required when suing a governmental entity. *E-Z Roll Off, LLC v. Cty. of Oneida*, 800 N.W.2d 421, 433-34 (Wis. 2011). While this decision does not reject the continuing violations doctrine in every antitrust case, it does display the Wisconsin Supreme Court weighing favorably the requirements of state law against federal doctrines. Given the differences between Wisconsin law and federal law and the lack of clear guidance to the contrary, current Wisconsin precedent does not foreshadow the Wisconsin Supreme Court recognizing the continuing violations doctrine in Wisconsin Antitrust Act claims. Therefore, the Wisconsin claims are untimely.

## CONCLUSION

After careful review of each remaining state law claim, the Court finds the following states' precedent foreshadows the adoption of the continuing violations doctrine under each state's antitrust statute: Arizona, California, Iowa, Maine, Michigan, Minnesota, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, Utah, West Virginia. Conversely, the Court finds

the following jurisdictions' precedent does not foreshadow the adoption of the continuing violations doctrine: District of Columbia, Florida, Kansas, Massachusetts, Mississippi, Nebraska, New Hampshire, New York, Tennessee, Vermont, and Wisconsin. Accordingly, for these reasons and the reasons provided above, Defendants' Motion is GRANTED in part and DENIED in part. Accordingly, the following state law claims are DISMISSED with prejudice from Count IV of the CAC (Master Docket Doc. # 105): District of Columbia, Florida, Kansas, Mississippi, Nebraska, New York, Tennessee, and Vermont. The following claims are DISMISSED with prejudice from the *Orr* Complaint (16-00809-CV-MD-GAF, Doc. # 1): Count III; and the Count IV state-law claims from Florida, Kansas, Massachusetts, Mississippi, Nebraska, New Hampshire, New York, Vermont, and Wisconsin.

**IT IS SO ORDERED.**

s/ Gary A. Fenner  
GARY A. FENNER, JUDGE  
UNITED STATES DISTRICT COURT

DATED: August 21, 2019